UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
WORLDHOMECENTER.COM, INC.,

          Plaintiff**,**  **MEMORANDUM AND ORDER**
               05-CV-3297 (DRH)(ARL)

  v.

L.D. KICHLER CO., INC.,
d/b/a KICHLER LIGHTING,

          Defendant.

----------------------------------------------------------------X
**APPEARANCES:**

**For the Plaintiff:**
**LAWRENCE R. LONERGAN, P.C.**
272 Seventh Avenue, 25th Floor
New York, New York 10001
By: Lawrence R. Lonergan, Esq.

**For the Defendant:**
**CALFEE, HALTER & GRISWOLD LLP**
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114-2688
By: John J. Eklund, Esq.
 William J. Michael. Esq.
  David A. Ruiz, Esq.

**CIARELLI & DEMPSEY**
737 Roanoke Avenue
Riverhead, New York 11901
By: John L. Ciarelli, Esq.

**HURLEY, Senior District Judge:**

    Defendant L.D. Kichler Co., Inc. d/b/a Kichler Lighting ("Defendant" or

"Kichler") moves to dismiss the complaint brought by Worldhomecenter.com, Inc. ("Plaintiff")

for failure to state a claim, pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). In the

Complaint, Plaintiff seeks an order enjoining and prohibiting Defendant from engaging in further allegedly unlawful acts that violate the Sherman Act, 15 U.S.C. § 1; the Donnelly Act, New York General Business Law § 340; and the New York Deceptive Trade Practices Act ("DTPA"), New York General Business Law § 349. Plaintiff also seeks damages with regard to the alleged unlawful conduct. For the reasons that follow, Defendant's motion is granted in part and denied in part.

## *BACKGROUND*

In crafting the following summary of facts, the Court accepts all of the factual allegations in the Complaint as true.

Plaintiff is a corporation formed under the laws of the State of New York with its principal place of business in Lynbrook, New York. It is an online retailer of home improvement products, selling to and servicing customers exclusively through its web site, known as "HomeCenter.com." Defendant is a foreign corporation with its principal place of business in Cleveland, Ohio. Defendant manufactures and sells lighting products exclusively to its authorized dealers.

Plaintiff purchases Kichler products for value from both exclusive and independent distributors for online resale to Plaintiff's customers. Because of the relatively low overhead and maintenance associated with on-line retailing, and because Plaintiff purchases a high volume of products from distributors, Plaintiff alleges that it is able to sell genuine Kichler products to consumers at sharp discounts compared to identical products offered for sale by traditional display room retailers.

Plaintiff has resold Kichler products over the Internet for several years without

2

incident or complaint. On February 1, 2005, however, Defendant initiated an Internet Minimum Advertised Price ("IMAP") policy that is the basis for the present litigation. The policy provides, in pertinent part, as follows:

> Kichler Lighting ("Kichler") has unilaterally adopted this Policy applicable to all Kichler customers effective February 1, 2005 with respect to the customer's advertising over the Internet of products supplied by Kichler.
>
> 1. Each Kichler customer remains free to establish its own resale prices. However, a customer may not A) advertise or otherwise promote Kichler Products over the Internet at a net price less than the Internet Minimum Advertised Price ("IMAP") Kichler establishes from time to time or B) sell Kichler Products to any other person who advertises or otherwise promotes Kichler products over the Internet at a net price less than the IMAP Kichler establishes from time to time. The initial IMAP Kichler has established is 1.8 times Distributor net price.
>
> 2. If a customer violates the policy, Kichler will withdraw from the customer all rights to sell, display or list Kichler Products on the World Wide Web for a period of six (6) months, and the customer will cease all sales, displays and listings within (30) days from the date of Kichler's notice to that effect.

(Compl., Ex. A.) In addition to the IMAP policy, Plaintiff cites a "THIRD AND FINAL NOTICE" from Defendant advising its customers of potential penalties should any distributors fail to abide the IMAP policy. This notice provides, in part:

> Dear Valued Customer:
>
> Once again we are writing to inform you of a new policy from Kichler that will become *effective February 1, 2005*. We are instituting an Internet Minimum Advertised Price (I.M.A.P.) policy to help our dealers compete with companies that advertise our products at reduced prices on the web.
>
> Due to the growth of the Internet channel of commerce, we are seeing more and more of our distributors losing sales to these low price Internet web sites. Our showrooms and electrical distributors

> make Kichler what it is today. We recognize the substantial financial investment you have made on our product line. With that investment in mind, it's just not possible to compete with the prices now being advertised on some Internet sites. Therefore we have created this policy to help protect our distributors, allow you to be competitive on the web, and to maintain the integrity of the Kichler line.
>
> We'd like to reiterate one more time the responsibilities of our distributors that supply 3rd party websites. You, the dealer, must only supply web businesses that comply with Kichler's I.M.A.P. policy. If a distributor is found supplying a web site that does not comply with the policy, that distributor will suffer the consequences that are outlined in the policy. We are very serious about the enforcement of this policy, and would like to avoid any surprises.

(*Id.* Ex. B.)

This notice, together with the IMAP policy, serve as the entire basis for the present suit. According to the Complaint, "Kichler's IMAP policy effectively eliminates Plaintiff's ability to sell Kichler's products at a discount. Moreover, the end consumer of Kichler products is cheated the benefit of a more efficient distribution system . . . ." (*Id.* ¶ 23.) Plaintiff further contends that "Kichler's IMAP policy is the result of multilateral communications between Kichler and its exclusive distributors, and constitutes an agreement to restrain trade." (*Id.* ¶ 24.) "By 'helping' and 'protecting' its dealers from competitive threats posed by Internet resellers, Kichler acknowledges a pact and a promise to preserve the margins enjoyed by Kichler and its distributors." (*Id.*) This alleged conspiracy, "allows Kichler to artificially maintain the price of its products and help its dealers compete with companies that advertise Kichler products for sale at reduced prices on the web." (*Id.* ¶ 25.) As such, "[t]he agreement among Kichler and its distributors effectively sets minimum resale prices or minimum advertised prices and constitutes vertical price fixing." (*Id.* ¶ 26.)

4

Plaintiff filed the present Complaint on July 13, 2005, based upon Kichler's alleged unlawful restraint of trade and minimum price maintenance. After filing an Answer, Kichler moved to dismiss the Complaint for failure to state a claim upon which relief could be granted. Plaintiff opposed the motion, and Kichler filed a reply memorandum.

**DISCUSSION**

**I.** *Rule 12(c) Standard*

A motion for judgment on the pleadings pursuant to Rule 12(c) is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Nicholas v. Goord,* 430 F.3d 652, 658 n. 8 (2d Cir. 2005). A plaintiff's claims can be dismissed for failure to state a claim only if a court finds that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court emphasized that at the pleading stage, a plaintiff need only meet the standard set forth in Federal Rule of Civil Procedure 8(a), which requires only a "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *See id.* at 512 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" set forth therein. *Id.* at 514 (citation and internal quotation marks omitted); *see also Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) ("'*All* complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory.") (quoting *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005)); *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir. 2006)

("[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests."); *Twombly v. Bell Atlantic Corp,* 425 F.3d 99, 106 (2nd Cir. 2005) ("At the pleading stage . . . the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (citations and internal quotation marks omitted). This is not to say, however, that a plaintiff bears no pleading burden. Rather "[a] plaintiff must allege, as the Supreme Court has held, those facts *necessary* to a finding of liability." *Amron*, 464 F.3d at 343 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005)).

**II.    *The Sherman Act Claim Survives the Motion to Dismiss***

Count two of the Complaint asserts a violation of Section 1 of the Sherman Act. The requirements of Rule 8 "notice pleading" as applied to claims under Section 1 are relatively modest and straightforward. Section 1 of the Sherman act proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Thus, "a Section 1 plaintiff must allege that (1) the defendants were involved in a contract, combination, or conspiracy that (2) operated unreasonably to restrain interstate trade, together with the factual predicate upon which those assertions are made." *Twombly*, 425 F.3d at 113.

Here, Defendant concedes, for purposes of this motion only, that Plaintiff has adequately alleged the existence of a conspiracy. (*See* Def.'s Reply at 2.) Indeed, this Court reached the same conclusion in a case with facts similar to the instant one. (*See Worldhomecenter.com, Inc. v. Thermasol, Ltd.*, No. 05 Civ. 3298, at 7 (E.D.N.Y. July 10, 2006) (finding that complaint adequately alleged agreement between manufacturer and distributers to

6

fix price where "[t]he allegation is that [the manufacturer's] actions were not independent, and that independent actions of this ilk would be anomalous in the absence of some agreement between [the manufacturer] and its traditional distributors.").) Thus, the only question remaining is whether Plaintiff has sufficiently alleged an unreasonable restraint on trade.

The restraint alleged must be unreasonable either under a "per se" analysis or under the "rule of reason." *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 96 (2d Cir. 1998). Generally there is a presumption against using the "per se" analysis. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.,* 485 U.S. 717, 726 (1988). Courts should only do so where the agreement at issue is so "manifestly anticompetitive" that its "pernicious effect on competition and lack of any redeeming virtue [is] conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm [it has] caused or the business excuse for [its] use." *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 50 (1977) (citation and internal quotation marks omitted). Examples of per se unlawful conduct include horizontal and vertical price-fixing[1] and certain type of group boycotts. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133-34 (1998).

Absent a "manifestly anticompetitive" scheme, the rule of reason analysis applies. Under this analysis, "an agreement will not violate the antitrust laws unless it can be shown that it will have an actual adverse effect on competition in the relevant market." *Elecs. Commc'ns. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 244 (2d Cir. 1997).

---

[1] "Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Business Elecs.*, 485 U.S. at 730.

Here, Plaintiff alleges a restraint of trade in the nature of a vertical restriction between a manufacturer (Defendant) and distributors (including Plaintiff). In its opposition papers, Plaintiff asserts that the per se analysis applies to its claims and that it "is not making out any case to be determined by the 'rule of reason' analysis." (Pl.'s Mem. at 8, 14.) A vertical restraint is deemed to be per se illegal only if it contains an agreement to fix prices. *Business Elecs.*, 485 U.S. at 735-36. Courts have consistently distinguished between agreements among manufacturers and distributors that establish exclusive channels of distribution, which are presumptively legal, and agreements between manufacturers and distributors that intentionally fix the price of the manufacturer's products, which are presumptively illegal. *Elecs. Commc'ns.*, 129 F.3d at 245. Thus, "[i]n the absence of price-fixing, agreements to terminate distributors, even at the behest of competing distributors who seek to maintain exclusive distribution rights, have repeatedly been sanctioned by the courts." *Id.*; *see also id.* at 245-46 ("Manufacturers must enjoy some freedom to determine how to distribute their products without subjecting themselves to attack under the antitrust laws by disappointed distributors, absent activity that is manifestly anticompetitive.").

Plaintiff alleges that the IMAP policy, which provides a minimum price at which distributors may advertise Defendant's products over the internet, constitutes an illegal price-fixing scheme designed to force internet resellers to maintain artificially high prices. Defendant counters that the IMAP policy cannot constitute a price-fixing agreement because by its very terms, it is expressly limited to *advertised* prices and unequivocally states that the distributors are free to establish their own resale prices.

Although the court recognizes that on its face, the IMAP policy only establishes

8

minimum price levels with regard to advertised prices, Plaintiff alleges that the policy directly impacts the resale prices for internet distributors. An internet shopper only sees the advertised price of products on a website such as Plaintiff's. That shopper does not have the capability of visiting a "bricks and mortar" store for further investigation into the product and the price because that store does not exist. Therefore essentially, the advertised price is the retail price for an internet shopper. Thus although facially the IMAP restricts only advertising prices, construing Plaintiff's allegations as true, it has the concomitant effect of restricting retail prices for internet retailers as well.

Accordingly, the Court finds that the Complaint sufficiently alleges vertical price fixing, rendering the Sherman Act claim adequate to survive Defendant's motion to dismiss.[2]

## III.   *The Donnelly Act Claim Survives the Motion to Dismiss*

Defendant also moves to dismiss the Donnelly Act claim, essentially on the same grounds as its motion to dismiss the Sherman Act claim. The Donnelly Act declares illegal every contract, agreement, arrangement or combination whereby a monopoly is established or maintained, or whereby competition or the free exercise of any activity in the conduct of any business, trade or commerce is restrained. N.Y. General Business Law § 340(1). The Donnelly Act was patterned after the Sherman Act and has been narrowly construed to encompass only those causes of action falling within the Sherman Act. *See State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 462-63 (1976); *see also Great Atl. & Pac. Tea Co., Inc. v. Town of East Hampton*, 997 F. Supp. 340 (E.D.N.Y. 1998) (finding Donnelly Act is modeled after the Sherman Act and is

---

[2] Defendant's reliance on *Worldhomecenter.com, Inc. v. Moen Inc.*, No. 05-CV-3296 (E.D.N.Y. 2006) is misplaced as the defendant-manufacturer in that case did not institute an IMAP policy; rather, it refused to sell its new product line to Plaintiff.

generally interpreted in accordance with federal precedent). As a result, the Donnelly Act "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." *X.L.O. Concrete Corp. v. Rivergate Corp.*, 83 N.Y.2d 513, 518 (1994) (citations and internal quotation marks omitted); *see also Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 244 n.8 (S.D.N.Y. 2003), *aff'd*, 80 Fed. Appx. 722 (2d Cir. 2003).

Defendant concedes that Plaintiff's federal and state antitrust claims should be analyzed together. (Def.'s Mem. at 5 n.1.) As such, Defendant urges the Court to dismiss Plaintiff's Donnelly Act claim based on the same objections it raised to the Sherman Act claim. *See Empire Volkswagon, Inc. v. World-Wide Volkswagon Corp.*, 814 F.2d 90, 98 (2d Cir. 1987) (dismissal of Sherman Act claim required dismissal of Donnelly Act claim). For the reasons set forth in connection with the latter claim, the Court declines to do so.

### IV. *The DTPA Claim is Dismissed*

Finally, Defendant moves to dismiss the DTPA claim on the ground that Plaintiff has failed to allege that Defendant engaged in a deceptive practice. The DTPA prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . . ." N.Y. Gen. Bus. Law § 349(a). It contains a private right of action such that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages . . . , or both such actions." *Id.* § 349(h).

To state a claim under the DTPA, a plaintiff must allege that "(1) defendant has engaged in an act or practice that is deceptive or misleading in a material way, and (2) plaintiff

has been injured by reason thereof." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 636 (2nd Cir. 1996). Deceptive acts and practices require a showing that a reasonable consumer acting reasonably under the circumstances would have been misled by the defendant's conduct. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (N.Y. 1995). A mere allegation of "anticompetitive conduct alone will not suffice." *Leider v. Ralfe*, 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005).

In the Complaint, Plaintiff fails to allege a deceptive act by Defendant. The IMAP policy, though alleged to be anti-competitive, is not alleged to be deceptive. Accordingly, the Court grants Defendant's motion to dismiss the DTPA Act claim.

## *CONCLUSION*

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED in part and DENIED in part. The Court GRANTS Defendant's motion to dismiss the New York Deceptive Trade Practices Act claim, but DENIES Defendant's motion to dismiss the Sherman Act and Donnelly Act claims.

**SO ORDERED**

Dated: Central Islip, NY
March 28, 2007

/s_____
Denis R. Hurley,
United States District Judge